IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

EATRIC SIMPSON,

   Plaintiff,

   v.

WARDEN WEBER, *et al.*,

   Defendants.

Civil Action No.: SAG-23-1414

## MEMORANDUM

Plaintiff Eatric Simpson, an inmate at Western Correctional Institution ("WCI"), filed a civil rights Complaint pursuant to 42 U.S.C. § 1983. ECF No. 1. The Court reviewed Simpson's pleadings, found that the claim failed as a matter of law, and afforded Simpson an opportunity to amend his Complaint. ECF No. 3. Simpson filed his Amended Complaint on June 29, 2023, and the Amended Complaint now serves as the operative pleading in this matter. ECF No. 5.

28 U.S.C. § 1915A requires this Court to screen pro se prisoner complaints for sufficiency. In doing so here, the Court gives the second Amended Complaint a liberal reading, construing all facts as true and in the light most favorable to Simpson. *See White v. White*, 886 F.2d 721, 722-23 (4th Cir. 1989). However, for the reasons that follow, Simpson's Amended Complaint will be dismissed for failing to state a claim. 28 U.S.C. § 1915A(b)(1).

### I.  Background

On January 18, 2023, Simpson was placed on administrative segregation due to his alleged participation in an assault. ECF No. 5 at 4. He explains that administrative segregation "is a tool used by the institutional staff to investigate potential rule violations," and is not intended to be punitive. *Id.* at 8. Once the investigation is complete, he states that inmates must be returned to the general population, or if appropriate, placed on disciplinary segregation. *Id.* Simpson was

ultimately "found to have done no wrong" following a hearing, and was "released back in to general population." *Id.* at 4.  When he attempted to return to work on January 30, 2023, he was told he was "being re-classed (i.e. fired)." *Id.*  He was told to write the duty officer about this issue, Defendant Frazee, which he did.  *Id.*  To date, he has not received a response.  *Id.*  He also informed Defendants Harbaugh, Butler, and Weber, but also received no response.  *Id.*

He avers that "as per the institutional handbook," if an inmate is placed on administrative segregation and is ultimately "absolved of any wrongdoing, he should get all his statuses returned to him (i.e. job and housing)."  *Id.* at 5. He states that he "did no wrong but was stripped of [his] job & housing with no way to appeal this decision."  *Id.*  He states that, instead of being returned to his original housing unit and employment position, he was instead "sent to the worst housing unit within the institution" and lost his job.  *Id.* at 8.  He states that these actions constitute "double jeopardy."  *Id.* at 8-9.  Additionally, he alleges his due process rights were violated because he was given "no avenue to challenge the, for all purposes, illegal firing."  *Id.* at 9.  As relief, he seeks to have his housing and job reinstated, to be awarded all back-pay, and $30,000.00 in damages.  *Id.* at 5.

**II.   Analysis**

In this Court's previous Memorandum Opinion and Order (ECF No. 3), the Court noted that Simpson had not alleged any conduct attributable to the four named defendants, nor had he presented information from which supervisory liability might attach.  Unfortunately, Simpson has not cured that problem here.

At its core, a civil rights action under 42 U.S.C. § 1983 is directed to unlawful conduct under color of law.  *See Owens v. Baltimore City State's Attorney Office*, 767 F.3d 379 (4th Cir. 2014).  Section 1983 of 42 U.S.C. provides, in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver,* 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). Essential to sustaining an action under § 1983 are the presence of two elements. Specifically, the plaintiff must demonstrate that: (1) he suffered a deprivation of "rights, privileges or immunities secured by the Constitution and laws" of the United States; and (2) the act or omission causing the deprivation was committed by a person acting under color of law. *West v. Atkins*, 487 U.S. 42, 48 (1988). A person acts under color of state law "only when exercising power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Polk Cty. v. Dodson*, 454 U.S. 312, 317-18 (1981) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)); *see also Philips v. Pitt Cnty. Mem'l Hosp.,* 572 F.3d 176, 181 (4th Cir. 2009) ("[P]rivate activity will generally not be deemed state action unless the state has so dominated such activity as to convert it to state action: Mere approval of or acquiescence in the initiatives of a private party is insufficient.") (citations and internal quotation marks omitted).

Further, in a suit arising under 42 U.S.C. § 1983, the doctrine of respondeat superior generally does not apply and liability attaches only upon a defendant's personal participation in the constitutional violation. *See Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985); *see also Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004). A supervisory official cannot be held liable for the acts of a subordinate unless the supervisor's "indifference or tacit authorization of subordinates' misconduct" can be deemed to have caused the injury to the plaintiff. *Baynard v.*

3

*Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)).  For a supervisor to be found liable for such acts, a plaintiff must prove that (1) the supervisor had actual or constructive knowledge that the subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to individuals like the plaintiff; (2) the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the subordinate's misconduct; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.  *Id.* (quoting *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)).

Simpson does not allege that Defendants Frazee, Weber, Butler and Harbaugh were personally involved in the decision to terminate his job or change his housing.  Their lack of personal involvement is fatal to a claim against these Defendants filed pursuant to § 1983.  Further, Simpson does not plead facts from which supervisory liability could attach.

Moreover, Simpson has not stated a Constitutional claim.  Simpson does not enjoy a constitutional right to be housed at any particular facility, or housing unit within a facility, or to receive specific programming or employment "so long as the conditions of confinement do not otherwise violate the Constitution." *Meachum v. Fano*, 427 U.S. 215, 224 (1976); *see also Cole v. Pepper*, No. GJH-18-3097, 2019 WL 470295, at *7 (D. Md. Sept. 30, 2019).  Unless the claimed denial presents an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," no such cause of action shall lie.  *Sandin v. Conner*, 515 U.S. 472, 484 (1995) *see also Prieto v. Clarke*, 780 F.3d 245, 250 (4th Cir. 2015).  Rather, the plaintiff must demonstrate the state's interest in avoiding "erroneous placement [in the challenged confinement] under the state's classification regulations *combined with* . . . harsh and atypical conditions" for Due Process protections to apply.  *Id*.  (emphasis in original) (citing *Wilkinson v. Austin*, 545 U.S.

4

209, 224-45 (2005)).  Simpson does not plead any facts to suggest that his reclassification resulted in conditions sufficiently harsh or atypical to warrant due process protections.  Further, as to Simpson's allegation that the institution violated its own policies, a violation of prison policy alone does not state a Fourteenth Amendment due process violation.  *See Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996); *Kitchen v. Ickes*, 116 F. Supp. 3d 613, 629 & n.6 (D. Md. 2015) (citing *Myers*).

In the absence of personal participation by the named Defendants, and without a colorable allegation that Simpson's Constitutional rights have been violated, his claims fail as a matter of law and must be dismissed.[1]

### III. Conclusion

Simpson has been afforded multiple opportunities to present his claims before this Court.  *See* ECF Nos. 1, 5.  Despite these opportunities, Simpson has failed to state a claim which can proceed.  As such, his Complaint shall be dismissed.

A separate Order follows.

Date: August 4, 2023  _____/s/_____
Stephanie A. Gallagher
United States District Judge

---

[1] The Court notes that Simpson misunderstands the concept of double jeopardy.  Losing his job and being required to move to a different housing unit do not violate the double jeopardy clause applicable to criminal proceedings, which provides "nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V.